Bowne et al., Appellants,
*against*
John A. Graham and Nathan B. Graham,
Appellees.

</div>

TRESPASS *quare clausum fregit.*

This was an action of trespass on the freehold. The plaintiffs, in their declaration stated, that on the 5th of *July*, A. D. 1801, the defendants *vi et armis* broke and entered their close, being the lot of land and the dwelling-house thereon, on which the said *Nathan B. Graham* now lives in *Rutland*, &c. and having so entered, with like force plucked and destroyed their apples, pears and peaches on their trees on said lot growing, and consumed and eat their

In an action of trespass *quare clausum fregit* against two, the regular levy of an execution upon a judgment rendered against one of the defendants who had quitted possession before, and never intermeddled with the possession since the levy, cannot be given in evidence against the other, who was in adverse possession at the date of the levy, and has not surrendered his possession since.

garden stuffs growing on said lot, and broke ten panes of glass, and converted a certain brass knocker to their own use, *et alia enormia*, with a *continuando* to the 26th of *February*, A. D. 1802, being the day of the teste of the writ.

The defendants pleaded severally not guilty, and issue to the Jury.

The counsel for the plaintiffs read in evidence a judgment rendered by the Circuit Court of the *United States*, holden at *Windsor*, within and for the District of *Vermont*, on the 5th day of *May*, A. D. 1801, in favour of their clients, against *John A. Graham*, for the sum of 2,704 dols. 49 cts. debt and costs, and the execution which issued on this judgment, with its levy on the 4th of *July*, 1801, on the premises, by *Thomas Leverett*, the marshal's deputy, who caused them to be appraised, and made record of his levy in *Rutland* town clerk's office the same day, and in the clerk's office from which the execution issued on the 18th of the same month.

It was conceded, that the plaintiffs made a demand of the possession of the premises of *Nathan B. Graham*, on the 6th day of *January*, A. D. 1802, who refused to deliver possession; and it appeared that *John A. Graham* had not been in possession since the year 1794. That *Nathan B. Graham* had held an adverse possession antecedent to the levy.

The question made is, whether the levy of the execution, and the consequent proceedings on the part of the plaintiffs, will show such a possession in them as will maintain an action *quare clausum fregit* against the defendants?

After argument, the Court delivered their opinion.

Tyler, Assistant Judge. The plaintiffs have brought their action *quare clausum fregit* against two defendants for trespass, done, as it is alleged in the declaration, on the 5th *July*, 1801, with a *continuando* to the 26th of *February*, 1802. The defendants have pleaded the general issue *severally*.

It appears that the plaintiffs recovered judgment against *John A. Graham*, one of the defendants, in *May*, 1801, and procured the land to be set off in part satisfaction of his execution on the 4th of *July*, 1801, by a regular levy. That the defendant *John A. Graham* has not been in possession since the levy, and no intermeddling with the close or tortious act is proved to have been done by him. That on the 6th of *January*, 1802, the plaintiffs demanded possession of the land levied upon from *Nathan B. Graham*, who refused to surrender his possession, which he has held adverse to the other defendant, antecedent to the levy, and adverse to the plaintiff ever since. So that the question which should be made is, whether the regular levy of an execution upon a judgment rendered against one of the defendants, who had quitted possession before, and never intermeddled with the premises since the levy, can be given in evidence to maintain an action *quare clausum fregit* against the other defendant, who has pleaded severally the general issue, and who was in adverse possession at the time of the levy, and has never surrendered his possession since?

It is an established principle, that before an entry and actual possession, one cannot maintain an action of trespass, though he hath *the freehold* in law. Therefore the books inform us, " that an heir before entry cannot have trespass against an abator, but a

disseisee may have it against a disseisor *for the dis-seisin itself, because he was in possession*, but not for an injury after the disseisin." 2 *Roll. Abr.* 553.

This leads to the inquiry, what is the operation of the levy of our execution on lands; and this must be decided by a sound construction of our own sta-tutes; for we can obtain little or no assistance from the writings of our *English* ancestors, as the *English* writ of *elegit* meddles only with the profits; but the levy of our writ of execution transfers the fee of the land, if held by the debtor.

How does it operate as against the debtor? Does it give the creditor possession as against him?

*Vermont* Stat. vol. I. 323. The third section of the act directing the levying and serving executions, in the latter clause enacts— " And all executions extended and levied upon any houses, lands, or tenements as aforesaid, with the re-turn of the officer thereon, being recorded in the re-cords of the lands of the town in which such houses, lands, or tenements, are situate, or in the office wherein deeds respecting the same are required by law to be recorded, and also returned into the office of the Clerk of the Court, or Justice of the Peace, from which such execution issued, and there re-corded, shall, as *against* such debtor, his heirs or assigns, make a good title to the party for whom such estate was taken, his heirs and assigns for ever."

But the mere levy of the execution and record made, create only a conditional interest in the estate levied upon in the creditor, and give no possession; for the 5th section provides, that the real estate, thus levied upon, may be redeemed by the debtor in six months from the date of the levy, by tendering or pay-

ing the full sums of debt, damages and costs mention-
ed in the writ of execution, and the officers' fees there-
on, together with interest thereon at the rate of twelve
per cent. per annum; and the 6th section declares
what shall be the operation of the levy, as it respects
both creditor and debtor, " that no person or persons
to whom any houses, lands or tenements shall be ap-
praised and set off as aforesaid, *shall enter and take
possession of the same until six months* after the exe-
.cution shall have been extended ; and if such estate
shall not be redeemed in manner as above provided
within that time, the person or persons to whom such
estate shall have been appraised as aforesaid, are
hereby authorized and empowered to enter and take
possession without giving any previous notice to the
person or persons in possession, in as full and ample
a manner as though seisin and possession of the same
had been delivered by the officer who served such
execution, or could have been given by the person
in actual possession, any law, usage or custom to the
contrary notwithstanding. But although, at the ex-
piration of the six months, the creditor, on non-pay-
ment of the redemption money may enter and take
possession without any previous notice; yet he must
make an actual entry, and take an actual possession,
which the statute has empowered him to do, and
which, if not done, he cannot have possession by im-
plication of law. The right of possession is one
thing, and that the statute has secured to the creditor
as against the debtor and those who hold under him ;
but the actual possession must be taken by his own
act; and if this be not done, he has not that posses-
sion which will enable him to maintain the present
action. This actual entry must be without breach of

the peace, or he himself is amenable to the law; and therefore the usual mode has been for the creditor to bring an action of ejectment, and obtain a legal and peaceable entry by a writ of possession; and the statute seems to countenance a resort to the law in case a peaceable entry is refused by the debtor or his legal representatives, by giving an action to the creditor for the mesne profits, and a right to tender their amount by the debtor in case the creditor does not take possession in bar to an action for the mesne profits, which clearly implies, that the Legislature did not consider that the possession accompanied the levy, or accrued to the creditor upon the non-payment of the redemption money. The creditor, then, by the mere operation of the levy of an execution on lands, on the expiration of the statute term without redemption, does not obtain possession of the lands, and cannot maintain trespass grounded on such process.

But what is the operation of the levy of an execution on lands, as relative to strangers to the judgment? The statute seems to have decided this by confining its operation in a certain case to " the debtor or debtors, or their legal representatives remaining in possession."

A creditor may levy his execution at will upon any real property which he esteems to be the debtor's. The 9th section of the statute contemplates cases where execution may be extended on lands not the property of the debtor, and provides a remedy by allowing the creditor an *alias* execution on his judgment on process of *scire facias*. It would be absurd to suppose that such levy could decide the rights of others, strangers to the judgment, and not holding under the debtor.

It therefore appears to me, that the plaintiffs in this action not having been in possession by actual entry, or by operation of the levy of their execution, cannot maintain their declaration of trespass *quare clausum fregit* against either of the defendants, and more especially against *Nathan B. Graham*, who was an entire stranger to the creditor's judgment, and held a possession antecedent to the levy, and adverse to both the creditor and debtor. If the plaintiffs wish to try the validity of their title, accruing from the levy, as against either, they should resort to an action of ejectment.

JACOB, Assistant Judge. I agree with Judge TYLER. The object of the plaintiffs' attorney in bringing this action, was probably to try the title under it; and if this action had been brought solely against *John A. Graham*, the judgment debtor, he would have been estopped from showing title against the levy; but as it appears he has never been in possession since the levy, and has committed no tortious act, this action will not lie against him. If the plaintiffs wished to try the validity and operation of their levy against a stranger to their judgment, who holds by adverse possession, they should have resorted to an action of ejectment.

Chief Judge. It is much to be desired that the gentlemen of the bar would advise their clients, who claim title to land, to institute an action of ejectment against all in possession. A resort to other actions, by which the title may be collaterally tried, is certainly not beneficial, as the verdicts are not conclusive as to the title, even against the trespassers.

Bowne et al.  If the title might be tried in the present action, which
v.  seems to have been the object of the attorney who
Graham.  drafted the declaration, a verdict for the plaintiff
would only sound in damages; and a common writ
of execution would issue, not a writ of possession,
which can only follow the action of ejectment.

Plaintiffs nonsuited.

*Cephas Smith,* junior, for the plaintiffs.
*Nathan B. Graham, pro se et al. def.*