## JAMES R. LANGDON *v.* HORATIO TEMPLETON.

*Chancery.  Bill to restrain the bringing of vexatious suits. Tax title.*

1. Ordinarily a Court of Equity will not entertain a bill to restrain the bringing of vexatious suits, until the right involved has been first determined by an adjudication at law.

2. Where, however, from the very nature of the suits sought to be restrained, no opportunity is offered the orator by which he *can* first so establish his right, such a bill may be maintained without a previous adjudication in a law court.

3. An adjudication in a suit of trespass *qua. clau.* against the tenant, does not determine the landlord's title; hence a landlord may maintain a bill of the peace to restrain the bringing of such vexatious suits against his tenant, whom he is bound to secure in the possession of the premises.

4. The vendor in a tax sale, conducted with due formality, who enters in good faith and in reliance upon his title and occupies, but who never receives a deed from the collector, has such an equitable interest in the premises that he may maintain such a suit.

This was a suit in chancery brought to the Washington County Court of Chancery. The bill alleged that in the year 1822 the General Assembly of the State of Vermont laid a tax of three cents per acre on the lands in the township of Worcester, in the county of Washington, for the construction and repair of the public highways, and that one Joshua Y. Vail was by the act appointed the collector to collect the said tax; that the tax on lot No. 52 in the second division of lands not having been paid, the said collector proceeded to sell the same with due formalities to Charles Bulkley and James H. Langdon, the highest bidders therefor, for the sum of eleven dollars and sixty-eight cents; that on April 29, 1824, the collector caused his warrant and return, together with a certificate of the oath taken by him, and all other papers and documents required to be recorded, to be so recorded in the town clerk's office in the said town of Worcester, and subsequently at different times in the

year 1825 caused lists of the lands sold and not redeemed on the 1st of April, 1825, to be so recorded, and that lot No. 52 aforesaid was among the number so named; that the said Bulkley and Langdon thereupon became entitled to receive from the said collector a deed of the said land, which should contain a covenant of warranty, and should be good and valid in law, and acquired a right to compel the execution of such a deed by the proper proceedings; that the said collector did execute deeds of some of the lands so sold by him, but whether he ever executed one to the said Bulkley and Langdon the orator knew not, but if so, it had been lost or accidentally destroyed, and that no record thereof remained; that said collector had deceased and his estate been administered upon many years ago; that the said lot had come from the said Bulkley and Langdon to the orator, who was the owner of the same; that Bulkley and Langdon, and those claiming under them had, ever since the tax sale, treated the lot as theirs, had paid the taxes on the same, and cut timber thereon, and that the orator in 1885 had put one Clogston into possession of the same under a contract by the terms of which he was obliged to assure the title and possession to the said Clogston, and that the said Clogston was then in possession; that the defendant, well knowing the rights of the orator in the premises, had procured from various persons, who had no interest whatever in the premises, quit-claim deeds to the same; that in July, 1886, the defendant had brought a suit in trespass against the said Clogston for cutting timber on the said lot, and in February, 1887, began another suit against the said Clogston containing thirteen counts in trover for the conversion of the timber on said lot, and that these suits were then pending in the County Court for the county of Washington.

The prayer of the bill was that the defendant might be perpetually enjoined from asserting his title to the said lot under the said deeds, from prosecuting his suits already begun, and from beginning any more in that behalf. Upon the filing of the bill a temporary injunction was granted in accordance with the prayer. The defendant made answer in which the defendant

insisted among other things that the bill should be dismissed for want of equity, inasmuch as the orator had a complete remedy at law, and craved the same benefit of this objection, as though the same has been made by demurrer. At the March term, 1888, the case was brought on for hearing upon this demurrer so incorporated in the answer; whereupon Rowell, chancellor, without hearing and *pro forma*, sustained the demurrer and dismissed the bill. The orator appeals.

*Pitkin & Huse*, for the orator.

The tax sale was valid. At the expiration of the time allowed for redeeming, the purchasers acquired a vested equitable interest in the land, and a right to compel the giving of a deed by the proper proceedings. Laws of 1822, p. 64; Slade's Com. pp. 662-669; *Isaac* v. *Shattuck*, 12 Vt. 668; *Wells* v. *Austin*, 59 Vt. 157; Blackw. on Tax Titles, pp. 298, 299, 372-4; 2 Desty on Taxation, pp. 907, 912, 915; *McCready* v. *Sexton*, 29 Iowa, 356; *Clippinger* v. *Tuller*, 10 Kan. 377; *Douglass* v. *Nuzum*, 16 Kan. 515; *Maxey* v. *Clabaugh*, 6 Ill. 26; *Graves* v. *Bruen*, 6 *ib*. 167; *State* v. *Wynn*, 19 Wis. 304; *Woodman* v. *Clapp*, 21 Wis. 350; *Eaton* v. *North*, 32 Wis. 303.

If the defendant owns this land, he can bring a suit which will establish his title to it. The suits which he has brought do not, and are therefore strictly vexatious suits and should be restrained. *Foye* v. *Patch*, 132 Mass. 105; *King* v. *Chase*, 15 N. H. 9; *Roberts* v. *Robeson*, 27 Ind. 454; *Arnold* v. *Arnold*, 17 Pick. 4; *Morse* v. *Marshall*, 97 Mass. 519; *Parker* v. *Hotchkiss*, 25 Conn. 321.

The orator has such a title that he cannot establish it at law, hence he may apply to a court of equity.

*J. A. & G. W. Wing* and *S. C. Shurtleff*, for the defendant.

A deed was necessary to give the orator any title under the tax sale. There is no equity in such a title. The statute prescribes the formalities and requisites of the sale, and these must be strictly followed or nothing passes. The statute in force at

the time of this sale required the collector to give a deed. No deed was given, hence no title was acquired by virtue of the sale. Cooley on Taxation, 352; *Tilson* v. *Thompson*, 10 Pick. 361-3; *Hoffman* v. *Bell*, 61 Pa. St. 444; *Ives* v. *Lynn*, 7 Conn. 505; *Donohoe* v. *Veal*, 19 Mo. 331; Blackw. on Tax Titles, 364 to 391; *Douglass* v. *Dangerfield*, 10 Ohio 152, 159.

We are unable to find a case where a court of equity has ever interfered to supply any omission in a tax title. In this case it is asked to supply the deed itself. "A person who seeks the benefit of a statute law must adhere closely to its provisions." The burden of proof is on the person who claims under a tax title. *Amson* v. *Baker*, 49 N. H. 161, 171, 168; *Livingston, Admr.*, v. *Pendergast*, 34 N. H. 544; *Sullivan* v. *Merriam*, 16 Neb. 157; *Baldwin* v. *Merriam*, 16 *id.* 199; *Seaman* v. *Thompson*, 16 *id.* 246; *Shelley* v. *Tole*, 16 *id.* 194; *Donahue* v. *Veal*, 19 Mo. 331.

Equity will not interfere to assist the orator. It might compel the collector or his representative to execute a deed, but the defendant in this case is a stranger to that transaction. *McGinnis* v. *Freedman*, 17 Pac. Rep. 635, 636; High on Injunctions, sec. 651; Blackw. on Tax Titles, 498, 499; *Young* v. *Dawling*, 15 Ill. 481; *Strade* v. *Washer*, 16 Pac. Rep. 929.

The payment of taxes does not aid the orator. *Reed* v. *Field et al.*, 15 Vt. 672; *Kidder* v. *Kenady*, 43 Vt. 717; *Wells* v. *Austin*, 59 Vt. 165-7; *Thompson* v. *Benham*, 61 N. Y. 52.

The opinion of the court was delivered by

TAFT, J. This case was heard upon demurrer to the bill. It is alleged in the bill that, under the orator, Clogston went into possession of the lot in controversy, in the latter part of the year 1885, and has since remained in possession. Whatever the title of the defendant may be to the land, upon the facts alleged, Clogston has a full defense to the suits at law, brought by the defendant against him, at least as to the action of trespass. The gist of the action is the injury to the possession, and the general rule is, that unless at the time the injury was committed the plain-

tiff was in actual possession, trespass cannot be supported, and, although the title may come in question, it is not essential to the action that it should.   Chit. Pl. 175. · It was held in this State that a title to lands, without entry. does not warrant an action of trespass *qua. clau.* against a party in actual adverse posses- sion, for the cutting of trees upon the land; nor (*semble*) tres- pass *de bonis* for the wood severed from the land.   *Pratt* v. *Battels*, 28 Vt. 685 ; *Bowne* v. *Graham*, 2 Tyler 411.

But the orator insists that though he can successfully defend the suits at law, he is entitled to protection against the vexatious suits instituted by the defendant against his, the plaintiff's, ten- ant, Clogston, citing *Morse* v. *Morse*, 44 Vt. 84.   The doctrine here invoked is that of the second class of bills of peace, where, the orator seeks to restrain the defendant from reiterating an unsuccessful claim or litigation.   The object of such a bill is to secure an established legal title against the vexatious recurrence of litigation.   This jurisdiction of a court of equity is now firmly established and is unquestionable.   Adams' Eq. 199 ; Bispham's Pr. of Eq., secs. 413, 417, 418 ; Willard's Eq. 323 *et seq.*  Bispham, *supra*, sec. 417, says : " In general, in order that a bill of peace may be maintained, the complainant must first have established his right at law."   Mitford, in his Chancery Plead- ing (4th Am. Ed.) 146, states the rule, viz.:  " Indeed, in most cases it is held that the plaintiff ought to establish his right by a determination of a court of law in his favor, before he files his bill in equity ; and if he has not so done, and the right he claims has not the sanction of a long possession, and he has any means of trying the matter at law, a demurrer will hold ;" the same learned author adds :   " If he has not been actually inter- rupted or dispossessed, so that he has no opportunity of trying his right, he may bring a bill to establish it, though he has not previously recovered in affirmance of it at law. In *York* v. *Pil- kington*, 1 Atk. 282, a bill of peace of the first class was brought to quiet the title of the plaintiffs in a right of fishery, to which a demurrer was interposed. The court say :  " Another cause of demurrer is that the plaintiffs have not established their

title at law, and have therefore brought their bill improperly to be quieted in possession. Now it is a general rule that a man shall not come into a court of equity to establish a legal right unless he has tried his title at law, *if he can,* but .this. is not so general an objection as always to prevail, for there has been a variety of cases both ways." Sm. Manual of Eq. 406 ; *Bush* v. *Western,* Prec. in Ch. (2d Ed.) 530 ; *Duke of Dorset* v. *Girdler, ibid.* 531. In the latter case, a case was cited between Wynn and Hatley, before Lord Keeper Wright, at the Inner Temple Hall, where a bill was brought of the same nature, touching a common, and the demurrer allowed, because there it appeared of his own showing that he was interrupted and dispossessed, and therefore had his remedy at law. The orator in this case is in possession by his tenant, Clogston, and the result of the actions brought against the latter, trespass *qua. clau.* and trover, will not be conclusive; fresh actions may be repeatedly brought, and the orator harrassed by numberless suits and indefinite litigation, with no means of trying the matter at law, so that the rights of the parties, in respect to the title to the land could be finally determined. The orator, being in possession, can bring no action at law against the defendant, and the latter brings no action that necessarily settles his title. The remarks of Robinson, Ch. J., in *Bowne* v. *Graham, supra,* are quite *apropos* to the case at bar. He said : " It is much to be desired that the gentlemen of the bar would advise their clients, who claim title to land, to institute an action of ejectment against all in possession. A resort to other actions by which the title may be collaterally tried, is certainly not beneficial, as the verdicts are not conclusive as to the title, even against the trespassers." We think, under the circumstances, the orator may sustain his bill, provided he has alleged therein such facts as constitute a legal title to or equitable interest in the land in question. He does not allege facts constituting a legal title. but he clearly sets forth an equitable interest in the land. The proceedings set forth in the bill show a purchase at the tax sale of the lot in question, by the persons

Langdon *v.* Templeton.

under whom the orator claims. They do not constitute a legal title, but after the time of redemption expired, were, and are now, evidence of an equitable interest in the land, and enable the purchaser to call in the legal title. The purchaser has, in effect, a lien upon the land. In Ohio it has been held that the interest of the purchaser savors so strongly of realty that it descends to the heir, and is not assets in the hands of the executor. Slade's Comp. 663, 668 ; 2 Blackw. on Tax Titles, sec. 963 ; *Rice's Lessees* v. *White*, 8 Ohio 216. The demurrer should have been overruled.

*Decree reversed and cause remanded, with leave to defendant to bring forward his answer, if he shall be so advised.*