# JAMES R. LANGDON v. HORATIO TEMPLETON.

## General Term, 1893.

*Void tax sale.    Possession under.    Payment of taxes.
Abandonment.    Constructive possession.    Orator
must have clean hands.    Estoppel.*

1.  A void tax sale, not followed by a collector's deed, gives the purchaser neither an equitable title nor color of title.

2.  The payment of taxes for many years following such purchase would not be an act of possession, nor evidence tending to show a possessory title.

3.  If the land so purchased was an unenclosed timber lot, an entry by the purchaser upon a part would not give him constructive possession of the whole.

4.  In that case, if the purchaser entered upon and cut off the timber from a part for the purpose of taking possession, and for thirteen years made no other entry, at the expiration of that time, in the absence of a finding that he had abandoned it, he would be presumed to be still in possession of the part upon which he had entered, as against one having no better title.

5.  If a stranger take a quit-claim deed of the lot from one having no title and put it upon record and enter upon the portion not previously entered upon by the purchaser, he will not thereby acquire constructive possession of the part so in the actual possession of the purchaser.

6.  The purchaser can assert no right in that part of the lot upon which he did not actually enter, but as to that part upon which he did enter, his possessory title will prevail, and he may, by suit in equity, restrain the stranger from setting up his paper title to that part, or from prosecuting suits against his servants for acts done upon that part.

7.  That the orator, in a suit brought for that purpose, has taken forcible possession of the remainder of the lot, is no reason why he may not maintain the suit as to that portion to which he is entitled.

8.  That the defendant, who claims under the paper title, had, before taking his deed, listed the entire lot to the orator, and knew that he had paid taxes upon it and claimed to own it, works no estoppel against him.

Bill in chancery.   Heard upon pleadings and a master's report at the September term, Washington county, 1892. Ross, chancellor, decreed for the orator.   The defendants appeal.

The controversy was in reference to lot 52 of the second division of lands in the town of Worcester, embracing about three hundred acres.   The orator alleged that in 1824 this land was sold for taxes and was bid off by Charles Buckley and James H. Langdon at such sale; that the lands were not redeemed; that the sale and all proceedings connected therewith were regular and valid, and that the said Charles Buckley and James H. Langdon thereby became entitled to receive from the collector a valid deed to said lot, but whether they ever did receive such deed the orator could not say; that by various conveyances the title of the said Charles Buckley and James H. Langdon had passed to the orator; and that the said Buckley and Langdon first, and the orator subsequently, had paid taxes upon said land, claiming to be the owner from the time of said tax sale down to the time of the bringing of the bill; that said lands were unenclosed timber lands, and that the orator had entered upon the same long before the defendant had attempted to take possession thereof.

That the defendant Templeton, having no interest whatever in said land, procured from one William H. Kellogg, who had no legal or equitable title to the same, a quit-claim deed of the premises, purporting to have been executed December 17, 1885, under which he claimed title to said lands.

That the orator had entered into a contract with one Clogston with reference to said land for the cutting of wood and timber upon the same, and that in virtue of said contract Clogston had begun to cut upon the premises; that Templeton had brought several suits against said Clogston for the cutting and conversion of the timber upon said premises, which suits were then pending.

The orator prayed that Templeton might be restrained from setting up his title to the premises and from prosecuting the aforesaid suits.

The defendant demurred upon the ground that the orator had a complete remedy at law. This demurrer was sustained in the court below, but that decree was reversed in the supreme court and the cause remanded for further proceedings. 61 Vt. 119.

Thereupon the cause was referred to a special master, who reported that the collector, who made the tax sale in 1824, gave no bond as required by law, and that no deed was ever executed by said collector to the said Buckley and Langdon. The master further reported that no possession was ever taken by the purchasers at said tax sale until 1872, when the orator, who had then become the owner of the title acquired under said tax sale, being advised that his title thereunder was defective, and for the purpose of taking possession of said lot to perfect his title, entered upon about ten acres of said lot and cut off from thirty to fifty thousand feet of timber, and that from then down to 1885 the orator made no other or further entry upon said lands; that in 1885 the defendant Templeton procured a quit-claim deed of said lot 52 from one Kellogg, his nephew, who had no title whatever to said lot, and recorded the same on the 17th day of December; that subsequently he entered upon said lot and began the cutting of logs and timber, and that thereupon one Clogston, acting by the direction of the orator, who knew that Templeton was in possession claiming under

said quit-claim deed, went in the night time and surreptitiously drew away said logs and timber; that afterwards said defendant went upon the premises and continued to cut logs and wood, whereupon Clogston, still acting under the direction of the defendant, procured a great number of men and drove off the defendant by force, and has continued in such forcible possession ever since; that thereupon said defendant began the suits referred to in the orator's bill, and was proceeding with the prosecution of the same when enjoined by the bringing of this bill.

The master further reported that the defendant Templeton was familiar with the state of the title to this lot; that he knew that the orator claimed to own it in virtue of a tax sale and had paid taxes on it for many years as the owner, and that the defendant himself, as lister for the town of Worcester at the quinquenial valuation of 1870, had set this with other lands to the orator; and that later, in 1881 and 1882, when the defendant was again a lister of said town of Worcester, the orator had directed the listers, by letter, to set to him the lot in dispute and that he would pay the taxes on the same, and that the lands were so listed.

*Dillingham*, *Huse & Howland* for the orator.

The quit-claim deed from Kellogg to Templeton gave the latter no color of title in the premises. 3 Wash. R. P., 3d Ed., 139; *Woods* v. *Banks*, 14 N. H. 111; *Wells* v. *Iron Co.*, 118 N. H. 530.

*Joseph A. Wing*, *Geo. W. Wing* and *S. C. Shurtleff* for the defendant.

The orator and his ancestors paid taxes upon the land because they claimed to be the owners in virtue of the tax sale. It appears that that sale was void and that no deed was ever given. Hence all other acts referable to the sale

and deed go for nothing. *Smith* v. *Higbee*, 12 Vt. 124;
*Ford* v. *Flint*, 40 Vt. 382.

The defendant was in visible possession, under a deed,
and no one but the legal owner could oust him from that
possession. *Downer* v. *Tarbell*, 61 Vt. 530; 3 Pom. Eq.
Jur., s. 1347.

The orator must show a better title in himself than the
defendant has or he is not entitled to the relief for which he
asks. *Fussell* v. *Gregg et al.*, 113 U. S. 550; 1 Dan. Ch.,
s. 573 and cases cited; *Whitcomb* v. *Hyde*, 2 Atkins 391;
*Leighton* v. *Leighton*, 1 P. Williams 671; *Field* v. *Jackson*, Dick. 599; *Pillsworth* v. *Hopton*, 6 Ves. 51.

Payment of taxes without title or color of title is not an
act of possession nor evidence tending to show a possessory
title. *Reed* v. *Field*, 15 Vt. 672; *Paine* v. *Hathaway*,
49 Vt. 314; *Tillotson* v. *Parkhurst*, 60 Vt. 94; *Wells* v.
*Austin*, 59 Vt. 157; *Downer* v. *Tarbell*, 61 Vt. 530.

The cutting of a portion of the land without color of title
gave no possession beyond what was actually covered.
*Wing* v. *Hall*, 47 Vt. 182; 6 Wait's Ac. and Def., 65;
*Ware* v. *Campbell*, 15 N. H. 208.

The deed of the defendant from Kellogg gave him color
of title. 3 Wash. R. P. 137 and cases cited; Blackwell
Tax Titles, 5th Ed., ss. 861-863; *Hodges* v. *Eddy*, 38 Vt.
327; *Oatman* v. *Barney*, 46 Vt. 594; *McGrady* v. *Miller*,
14 Vt. 128; *Swift* v. *Gage*, 20 Vt. 224; *Hall* v. *Lane*, 102
U. S. 461; *Pillow* v. *Roberts*, 13 How. U. S. 472.

ROWELL, J. When this case was here on demurrer to
the bill, 61 Vt. 119, it was held that in the circumstances
alleged, the bill was maintainable as a bill of peace, for that
the tax sale of the lot in 1824, as the proceedings therein
were set out in the bill, conferred an equitable title on the
purchasers thereat, under whom the orator claims, and gave
them the right to call in the legal title; and for that the

orator, being in possession, could bring no action at law against the defendant who, it did not appear, had disturbed his possession, but who, it did appear, was making claim, and had brought suits against the orator's tenant, but not such as would necessarily settle whether the defendant had title or not. But now the case is materially changed from that made by the bill, for by the finding of the masters it appears that said tax sale was void, and therefore it did not confer even an equitable title on the purchasers thereat, much less did it give them a right to call in the legal title, for no legal title was thereby ever inchoated. Nor did it give color of title. That would have to come from the collector's deed, which was never given. *Wing* v. *Hall & Darling*, 47 Vt. 182, 216.

The orator and those under whom he claims paid taxes on the lot from 1824 to 1886, and claimed to own it. But the payment of taxes is not an act of possession, and does not tend to show a possessory title. *Reed* v. *Field*, 15 Vt. 672 ; *Tillotson* v. *Pritchard*, 60 Vt. 94. Neither the orator nor those under whom he claims ever had color of title to the lot. The orator does not claim title by adverse possession ; and as the tax sale was not effective to confer title, which is the only source from which he ever claimed to have derived title, he is left to stand on possessory title only, if any he has.

Now concerning possession, the only allegations of the bill are, that said lot is timber land and has never been enclosed, and that the orator cut timber on it long before the defendant laid claim to it, which cutting was the only use the orator had any occasion to make of it ; and that in 1885, one Clogston went into possession of it, and has since remained in possesion, cutting timber therefrom and manfacturing it into lumber, under a contract with the orator by which he is bound to maintain for Clogston the right thus to possess and to cut timber.

As to the allegation of cutting before the defendant laid claim the finding is that neither the orator nor those under whom he claims ever did anything on the lot till late in the fall of 1872, when the orator, acting under the advice of counsel, who told him that his title was bad and to go into possession, entered on about ten acres of the southeast corner of the lot and that fall and winter cut thereon from thirty to fifty thousand feet of lumber. As to the allegation of Clogston's possession the finding is that on December 21, 1885, the defendant, knowing of the orator's claimed rights to the lot and what he had done upon and concerning it, finding the lot vacant and no one in possession, entered thereon under his deed of Dec. 17, 1885, from Kellogg, which had been recorded, and continued there, cutting wood and timber, till the 8th day of January, 1886, when the orator, knowing from the record of the Kellogg deed, entered upon the lot in the night time, through Clogston, and drew away and converted to his own use the wood and timber there remaining that the defendant had cut; and further, that in January, 1887, the defendant, with his men, again began to cut wood and timber on the lot, and that thereupon Clogston, acting for and under the direction of the orator, who knew that the defendant was in peaceable possession under his deed from Kellogg, raised a force of men, and therewith went to the lot, whereupon the defendant and his men, to prevent violence, left the lot, and Clogston and his force entered in behalf of the orator, who has ever since retained possession by force, and cut off and converted to his own use more than a million feet of timber. This is all the possession the orator is shown to have ever had.

It not appearing that the lot had definite boundaries marked upon the land, and the orator having neither title nor color of title thereto, his actual possession of the ten acres thereof, though taken claiming the whole lot, gave him no constructive possession of the residue. So prior to the

defendant's entry on December 21, 1885, the orator never had possession, actual or constructive, of any part of the lot except said ten acres.  He cannot, therefore, on the ground of possessory title, have relief against the defendant in respect to any other part of the lot.  It does not appear that the defendant has ever entered upon said ten acres or any part thereof; and if his deed from Kellogg, under which he entered, gave him color of title to the whole lot, as he claims and the orator denies, his actual possession thereunder of other parts of the lot, though he claimed the whole, gave him no constructive possession of said ten acres if the orator was then in the actual adverse possession thereof.  *Executors of Stevens* v. *Hollister*, 18 Vt. 294 ; *Bellis* v. *Bellis*, 122 Mass. 414 ; *Elliot* v. *Pearl*, 10 Pet 443.   To be sure the masters say that when the defendant entered he found the lot vacant and no one in possession ; but in view of the fact that the lot had been listed to the orator and he had continued to pay taxes on it ever after his entry on the ten acres in the fall of 1872, we do not construe this finding to mean that the orator had abandoned all possession he had ever had of the lot, but only that he was not then in the actual occupancy of any part of it.   Any other construction, we think, would be unwarrantable, in the circumstances. The fact that the orator had done no act upon the lot for nearly thirteen years next before the defendant's entry, does not of itself and as matter of law constitute an abandonment of the possession he had formerly had.   Whether a prior possession has been abandoned or not is a question of fact, to be determined from the circumstances of the case. *Patchin* v. *Stroud*, 28 Vt. 394.

There being, then, no finding of abandonment by the orator, we think it must be held, in view of the character of the land, that at the time the defendant entered the orator still had possession of said ten acres.   But it is claimed that this possession was not such as would ripen into title against

the owner, and therefore is not good against the defendant, a mere stranger, standing in no confidential relation to the orator. But we think that the possession, being under a claim of right, contained all the other elements of adverse possession, and would ripen into title as against the owner in the requisite time. But it is not necessary that it should be of this character in order to be good against the defendant; for a possession may be good against one man and not good against another. If there is a tortious possession, not amounting to a disseisin, the constructive possession, as between the tortfeasor and the party having the legal title, is considered as continuing in him who has the right; but the tortfeasor may, nevertheless, maintain trespass against a stranger who disturbs his possession, and the stranger cannot defend by saying that the tortfeasor's possession was the possession of the true owner. *Slater* v. *Rawson*, 6 Met. 439; Cf. *Austin* v. *Bailey*, 37 Vt. 219; *Perkins* v. *Blood*, 36 Vt. 273; *McGrady* v. *Miller*, 14 Vt. 128. "He that hath possession of land, though it be by disseisin, hath right against all men but against him that hath right." Doct. and Stud., ch. 9. So in the Roman law, when one had legal possession of a thing, by which was meant physical apprehension with intent to hold as owner, he was protected in his possession against all who had not a better right, and the praetor granted him an interdict for the purpose of protecting him. Sand. Just., Lib. 11, Tit. 6.

Now in respect of relief in regard to said ten acres, the orator stands much as he stood when the case was here before in respect of relief in regard to the whole lot; and as the law of the case was then settled, he seems to be entitled to relief as to that part of the lot, unless, as claimed by the defendant, he is disentitled thereto by reason of the forcible manner in which he took and retained possession of the lot as aforesaid, which, it is claimed, was a violation of the statute against forcible entry and detainer, and made the

possession thus taken unlawful, even though the orator had a right of entry, which is denied.

This claim is based upon the maxim that he who comes into equity must come with clean hands. But this maxim, salutary in principle and broad in application as it is, has its limits; and in the administration of equitable relief in particular controversies, it is confined to misconduct in regard to the matter in litigation that has in some measure affected the equitable relations of the parties in respect thereto and the equitable rights asserted by the orator. 1 Pom. Eq., s. 399.

. It is said in *Meyer* v. *Yesser*, 32 Ind. 294, that fraud without injury is never available as a defence in equity. Turning to the case, it does not appear, as we have said, that the defendant ever entered upon said ten acres, so it does not appear that he was driven therefrom by the orator's forcible entry, if such it is to be regarded, and such entry in no way affects the equitable relations that existed between the orator and the defendant in respect of said ten acres before such entry was made, nor the equitable rights of the orator growing out of his prior possession thereof, on which rights alone relief is here granted. The maxim, therefore, is not applicable.

It is contended that the defendant is estopped from claiming the lot because of what he did about listing it to the orator and knew about the orator's acts upon and concerning it and his claim of title to it. But this contention cannot be maintained, for no element of estoppel is disclosed by the case.

The views expressed render it unnecessary to consider any other question discussed at the bar.

*Decree reversed and cause remanded, with directions to enter a decree for the orator, making the injunction perpetual as to the ten acres and as to the suits at law as far as they relate thereto. Let the question of costs below be there determined.*