THE CITY OF CHICAGO et al.

v.

THE UNION STOCK YARDS AND TRANSIT CO. OF CHICAGO.

Filed at Ottawa November 9, 1896.

1. ESTOPPEL—*long acquiescence by city in crossing of streets by railroad works estoppel.* A city is estopped to deny the right of a railroad company to cross highways within its limits, where it, and the village and town which it succeeded, have, by acquiescence and affirmative acts, for more than twenty years recognized the right of the company to maintain and operate its road across the streets.

2. SAME—*effect of general police power upon estoppel.* That a road operated by a stock yards company is subject to regulation and control under the general police power does not prevent estoppel of a city to deny its right to cross streets.

3. NUISANCES—*city cannot destroy value of railroad in abating nuisance.* That a stock yards company authorized to operate a railroad through a city and transport freight of every kind creates a nuisance by the transportation of live stock or other substances injurious to the health and general welfare, does not justify the city in removing its tracks from the street as an abatement of the nuisance, to the destruction of the value of the road.

4. SAME—*extent of power to abate nuisance—destruction of property.* The power to abate a nuisance does not extend to the destruction of private property used in creating such nuisance, which is susceptible of use for a lawful purpose.

5. EQUITY—*limits of maxim that one must come into equity with clean hands.* A corporation cannot be denied relief in a proper case in a court of equity because of *ultra vires* acts in relation to the subject matter of the litigation, under the maxim that a party coming into a court of equity must come with clean hands.

6. SAME—*that company has used its railroad unlawfully does not deprive it of standing in equity.* That a company authorized to maintain a railroad for certain purposes has used such road for unauthorized purposes will not prevent its obtaining relief against an unlawful removal of its tracks, upon the ground that it does not come into court with clean hands.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

The appellee filed its bill in equity to restrain appellant and its commissioner of public works from removing, or causing to be removed, the railroad tracks, side-tracks,

switches and turn-outs which constitute the railroad connecting appellee's stock yards on the west with the Illinois Central and Michigan Central railroads on the east, and with intermediate connecting roads, in pursuance of a resolution of appellant's city council adopted on the 26th of March, 1894.   This resolution was as follows:

"*Resolved,* That the commissioner of public works be and he is hereby directed to notify the Union Stock Yards and Transit Company to cause its railroad tracks to be removed at once off and from the following avenues and places, viz., Butterfield street, Burnside street, State street, Wabash avenue, Michigan avenue, Indiana avenue, Prairie avenue, Calumet avenue, Vincennes avenue, Union avenue, Langley avenue, Forty-first street, Cottage Grove avenue, Ellis avenue, Lake avenue and Washington avenue, running east from Lake avenue; and that unless said company proceed to remove the same within ten days after such notice, the commissioner of public works shall cause the same to be removed at the expense of said company."

The streets named in the resolution are intermediate streets crossed by the railroad, and the removal of the tracks from one or more of these streets would destroy the continuity of appellee's line of road and sever the connection thus made between its stock yards and two or more railroads.   The tracks sought to be removed are two main tracks, one laid in the year 1865 and the other in 1875.   At the time of the passage of this resolution, appellee or its lessees had maintained and operated the first named track for upwards of twenty-nine years and the second track for upwards of twenty years.   The city answered the bill, claiming that the said tracks were unlawfully in the streets mentioned, and also that in their use and operation by appellee they constituted and were a nuisance, and claimed the right to have the said tracks removed from said public streets and to abate the nuisance.

The bill and answer were sworn to, and a motion was made by the complainant for a preliminary injunction, which was heard on the bill, answer and affidavits.

Before the motion was decided it was stipulated by the parties that the bill, answer and affidavits be treated as depositions, and that the hearing should be a final one and the decree entered in the cause a final decree. The decree was entered in accordance with the prayer of the bill, finding "that the complainant has a lawful right to maintain and operate the railroad tracks, side-tracks, switches and turn-outs as laid and maintained by it at and prior to the time of the filing of said amended bill, on the said right of way mentioned in said amended bill, and more particularly described as the right of way of the Union Stock Yards and Transit Company, extending from the Illinois Central railroad near the shore of Lake Michigan on the east, to the stock yards of said Union Stock Yard and Transit Company on the west, in the county of Cook and State of Illinois, being the railroad tracks, side-tracks, switches and turn-outs shown on the plat marked 'Exhibit C' to said amended bill and filed with the same, and that the defendants have no legal right to remove said railroad tracks, side-tracks, switches and turn-outs, or any part thereof, as directed by the said resolution of the city council of the city of Chicago passed on the 26th day of March, 1894, set forth in said amended bill." And the city and its officers were "perpetually enjoined and restrained from removing, or causing to be removed, the said railroad tracks, side-tracks, switches, turn-outs, or any part thereof, on the said right of way of the complainant, the Union Stock Yard and Transit Company, * * * extending from the Illinois Central railroad on the east to the stock yards of the Union Stock Yard and Transit Company on the west." The city appealed to this court from that decree.

The appellee company was incorporated by special charter approved and in force February 13, 1865. By section 2 of the charter the company was authorized to locate and maintain, at a point to be selected by it, within a territory named, south of the city limits, "the

necessary yards, buildings, railway lines, tracks, etc., for the reception, safe keeping, feeding and watering, and for the weighing, delivery and transfer of cattle and live stock, and also dead and undressed animals," and "for the accommodation of the business of a general union stock yard for cattle and live stock," including the erection of one or more hotel buildings "for the convenience of drovers, dealers and the public doing business" at the yards.   Section 3 of the act provided as follows: "The said company shall construct a railway with one or more tracks, as may be expedient, from the grounds which may be selected for its yards, so as to connect, outside of the city of Chicago, the same with the tracks of all the railroads which terminate in Chicago, the lines of which enter the said city on the south, between the lake shore, in the south-east corner of said city, and on the west between said last named point and the north line of section number 19,  *  *  *  and shall have power and authority to locate, and from time to time to renew, change, alter, construct and reconstruct, and fully to finish and maintain, its said railroad or railroads, side-tracks and connections, and to transport or allow to be transported thereon, between said railroads and cattle yards, all cattle and live stock and persons accompanying the same, to and from said yards, and may also transport or allow to be transported between the railroads entering said city, and so connected by the road or roads hereby authorized, by steam or other power, freight and property of every kind, as well as stock and cattle.  *  *,  *  The said company shall have the right, with the consent of the proper authorities having control thereof, to locate or construct its road across any street or highway, doing as little damage and discommoding the public as little as may be consistent with the use of said tracks so laid."

In 1865, after obtaining its charter, appellee located its road, and by condemnation and purchase procured the right of way between said streets where its tracks are

now located, but there is a controversy between the parties as to whether appellee obtained the consent of the proper authorities having control of the streets in question before laying its tracks across said streets. Further facts will be found stated in the opinion of the court.

GEORGE A. DUPUY, Ass't Corporation Counsel, L. & P. TRUMBULL, and HAMLINE, SCOTT & LORD, for appellants:

The tracks in question are a public nuisance, and the city council of the city of Chicago has full power to order and enforce their removal wherever they occupy public ground. *Wahle* v. *Reinbach,* 76 Ill. 322; *Powder Co.* v. *Tierney,* 131 id. 326 ; *Cooper* v. *Randall,* 53 id. 24 ; *Wylie* v. *Elwood,* 134 id. 286; Wood on Nuisances, (3d ed.) secs. 16, 18; *Harmon* v. *Chicago,* 110 Ill. 406.

It is not the law that because a corporation is permitted to run a railroad, it can, by virtue thereof, maintain a nuisance. *Railroad Co.* v. *Grabill,* 50 Ill. 241 ; *Gas Light Co.* v. *Graham,* 28 id. 73; *Wier's Appeal,* 74 Pa. St. 230; *Schively* v. *Railway Co.* 74 Iowa, 169; *Dierks* v. *Comrs. of Highways,* 142 Ill. 212.

Where the legislature confers upon a municipal corporation authority to abate a nuisance injurious to the public health, this authorizes the city government to impose penalties upon persons maintaining nuisances within its jurisdiction, and to remove the same, provided the thing be a nuisance at common law or by statute. Wood on Nuisances, (3d ed.) 975; *Roberts* v. *Ogle,* 30 Ill. 459; *King* v. *Davenport,* 98 id. 305.

The city of Chicago is not estopped. *Railroad Co.* v. *Belleville,* 122 Ill. 383; *Davidson* v. *Young,* 38 id. 152; *Logan County* v. *Lincoln,* 81 id. 159; *Hill* v. *Blackwelder,* 113 id. 291.

WINSTON & MEAGHER, JOHN J. HERRICK, and JOHN P. WILSON, for appellee:

Under the undisputed facts the city is estopped from now questioning the appellee's right on the ground that

through the omission or neglect of the clerk the action which the evidence shows was in fact taken, and on the faith of which the company has continuously acted, was not made matter of record.   *School District* v. *School District*, 81 Mich. 339; *Knight* v. *Railroad Co.* 70 Mo. 231; *People* v. *Maxon*, 139 Ill. 306; *Railway Co.* v. *Commissioners*, 151 id. 204; *Bigelow* v. *Perth Amboy*, 1 Dutch. 297; *Troy* v. *Railroad Co.* 13 Kan. 70.

Where third persons have acted on the faith of an order or resolution actually passed, their rights cannot be prejudiced by the neglect of the clerk to keep proper minutes.   *Bigelow* v. *Perth Amboy*, 1 Dutch. 297; *Hutchinson* v. *Pratt*, 11 Vt. 402; *Bridgeford* v. *Tuscumbia*, 16 Fed. Rep. 910; *Knight* v. *Railroad Co.* 70 Mo. 231; *Taymouth* v. *Koehler*, 35 Mich. 222; *Athearn* v. *Independent District*, 33 Iowa, 105.

If there ever was any question as to the power of appellee, under its charter and the consent given by the town authorities, to build a second track, this question has been conclusively settled by the long practical construction, as shown by the acts of the parties, and long acquiescence and many acts of recognition.   *Wadleigh* v. *Bayles*, 5 Taunt. 385; Broom's Legal Maxims, 682; *Lyman* v. *Gedney*, 114 Ill. 388; *Topliff* v. *Topliff*, 122 U. S. 121; *Chicago* v. *Sheldon*, 9 Wall. 50.

Where a particular use of a street by an individual or corporation would be lawful if authorized by the proper municipal board or other officers, such consent or authority will be implied, in the absence of other evidence, from long acquiescence and acts of recognition.   *Gregsten* v. *Chicago*, 145 Ill. 451, and authorities cited; *Babbage* v. *Powers*, 130 N. Y. 281; *Jennings* v. *Van Schaick*, 108 id. 230; *Pembroke* v. *Railway Co.* 14 Am. & Eng. R. R. Cas. 117.

Subsequent ratification or assent is as effectual in law as an original authority; and this subsequent ratification or assent need not be express, but may be implied from acts, such as long acquiescence, acts of recognition, etc. *Connett* v. *Chicago*, 114 Ill. 239; *Town of Bruce* v. *Dickey*, 116

id. 534; *Gregsten* v. *Chicago,* 145 id. 462; *Gridley* v. *Blooming-ton,* 68 id. 47.

The doctrine is well settled that the principle of *estoppel in pais,* in its application to municipal corporations, is not limited to the private property rights of the corporation, but applies equally to rights affecting the public.   *Railroad Co.* v. *Joliet,* 79 Ill. 25; *Martel* v. *East St. Louis,* 94 id. 67; *Railway Co.* v. *People,* 91 id. 251; *People* v. *Maxon,* 139 id. 306; *Railway Co.* v. *Commissioners,* 151 id. 204; *Smith* v. *Osage,* 80 Iowa, 84; *Lumber Co.* v. *Oshkosh,* 61 N. W. Rep. 1108; *Pembroke* v. *Railway Co.* 14 Am. & Eng. R. R. Cas. 117.

The maxim that he who comes into equity must come with clean hands, only applies to the particular transaction under consideration, for a court will not go outside of the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing.   6 Am. & Eng. Ency. of Law, 708; Bispham's Eq. 48; *Dering* v. *Earl of Winchelsea,* 1 Cox's Ch. 318; *Langdon* v. *Templeton,* 66 Vt. 173; *Ansley* v. *Wilson,* 50 Ga. 418; *Bateman* v. *Fargason,* 4 Fed. Rep. 32.

Mr. JUSTICE CARTER delivered the opinion of the court:

It is in the first place contended by appellant that appellee has not maintained its right to the decree enjoining appellant from removing the railroad tracks from the streets in question, because, as it is claimed, there is no competent evidence in the record that appellee ever obtained the consent of the municipal authorities of the village of Hyde Park and town of Lake, through which village and town the railroad was built, to lay the tracks across such streets.   It is not denied that such consent was necessary, but appellee insists that the required consent was in fact given, although no record of the action of the village and town authorities in respect to the matter could be found.   Much of the argument is devoted to the question of the competency of the testimony of

numerous witnesses admitted by the court on behalf of appellee to prove that meetings of the village and town authorities were in fact held and consent voted to lay the tracks across the streets in question, without any sufficient proof that any record of any such meetings and vote was ever made, or if made, could not, upon proper search, be found.  We do not deem it necessary in the decision of the case to enter upon any discussion of either the evidence or the law on this branch of the case.  We are satisfied that the evidence, when fully and fairly considered, shows that the municipal authorities, respectively, of the village and town, and of their successor, the city of Chicago, have, by long acquiescence and by many affirmative acts, recognized the right of appellee to maintain and operate its road across these streets. During the period of more than twenty years since the last track was laid appellee has, in obedience to the commands of the municipal authorities, expended considerable sums of money in improvements at the street crossings, in constructing and repairing culverts, planking the crossings, erecting and maintaining safety gates and electric lights, constructing plank and cement walks, and other improvements beneficial to the general public and the municipalities as well as to the appellee itself. The board of trustees of Hyde Park approved the plat of the right of way of appellee through the village in 1883, and the same year adopted a resolution permitting private parties to lay tracks to their coal yards connecting with appellee's road as laid, gave permission to appellee to build depots, and from time to time, before the annexation of the village to Chicago, passed many orders and resolutions making mention of these tracks as established monuments in fixing grades and directing other public work.  The same course of recognition was followed after annexation by the city of Chicago, up to within a short time before the passing of the resolution directing the removal of the tracks, and it is now too late for

appellant to raise the question of the lack of original consent of its predecessors to the laying of the tracks. It is estopped therefrom upon the plainest principles of equity, and the subsequent ratification shown upon this record should be deemed equivalent to precedent authority. For some authority reference may be had to the following cases: *Gregsten* v. *City of Chicago*, 145 Ill. 451, and authorities cited; *Babbage* v. *Powers*, 130 N. Y. 281; *Jennings* v. *Van Schaick*, 108 id. 230; *Pembroke* v. *Canada Central Railway Co.* 14 Am. & Eng. R. R. Cases, 117; *Connett* v. *City of Chicago*, 114 Ill. 233; *Town of Bruce* v. *Dickey*, 116 id. 527; *Gridley* v. *City of Bloomington*, 68 id. 47; *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 id. 25; *Chicago and Northwestern Railway Co.* v. *People*, 91 id. 251; *Martel* v. *City of East St. Louis*, 94 id. 67; *People* v. *Maxon*, 139 id. 306; *Chicago and Northwestern Railway Co.* v. *West Chicago Park Comrs.* 151 id. 204.

It is true, the evidence shows that the trustees of Hyde Park refused permission to lay the second track in 1875, and later brought an action of ejectment against appellee to oust it from Caroline (since Fortieth) street, not embraced in the resolution of the council; but judgment was rendered in favor of appellee, and after a new trial was taken under the statute the suit was dismissed for want of prosecution. But these and other acts of the village authorities, so far as they tend to disprove consent and to disprove the facts upon which the alleged ratification and estoppel rest, are met by proof that the municipal authorities finally acquiesced in the claim of appellee that it had the right to lay the second track under the consent, which it seems was not then questioned, that had originally been given to locate its road through the village. It is not material here whether the company had such right or not. It is sufficient if, by long acquiescence and acts of recognition, and by inducing appellee to expend large sums of money in improving the crossings of its road over these public streets, and in erecting

depots and in making other improvements which would be useless if the continuity of the line of the road were broken, appellant is now precluded, upon principles of equitable estoppel, from asserting that the tracks already laid should be removed as unlawful obstructions to the streets.   That this road, like all others, is subject to regulation and control under the general police power does not affect the particular branch of the case above mentioned.

The next contention is, that appellee, in using the road and allowing it to be used for the purposes designated in its charter,—that is, in transporting and allowing to be transported "thereon between said railroads" (the connecting lines entering the city from the south) "and cattle yards all cattle and live stock,"—has created and maintained, and is now maintaining, a public nuisance of great magnitude within the city of Chicago, destructive of the values of private property located, and of the comfort and health of the people residing, in the vicinity of said road.   The proof, as made on this point by the city and not denied by the company, is, in substance, that when the road was first constructed it was outside of the city limits and ran through a sparsely settled community, and that by the annexation of Hyde Park and the town of Lake it is now within the city limits, and that the lands in the immediate vicinity of the road have become occupied by the residences of many people; that churches, school houses and many costly residences are now located near appellee's said road; that freight trains loaded with live stock, offal, manure and other noxious substances are passing over or standing on these tracks almost continually, at all hours of the day and night; that the stench from the filthy cars, the smoke, dust and cinders from the overloaded engines, are carried into the houses, dwellings, churches and other buildings to such an extent as to be highly injurious to the comfort and health of the people there living or assembled, and to

property, real and personal, situated near the road. There can be no doubt that the proof (though by agreement made only by affidavits) is sufficient here to show that in the use now being made of the road a serious nuisance is maintained, and it would be a reproach to the law if it afforded no remedy. But is the destruction of the company's tracks a proper or permissible remedy? The breaking of the continuity of the line by the removal of the tracks from the street crossings would, of course, destroy the substantial value of the road,—at least of that part of it lying east of the Chicago, Rock Island and Pacific railroad,—and would, so far as we can see, impose on appellee a great and unnecessary loss. If it be conceded that, notwithstanding its charter, appellee may be restrained from transporting live stock over this road on the ground that the necessary result of such a use of the road is to maintain an intolerable nuisance injurious to the public health, in view of the changed condition of the locality from a sparsely settled to a populous district, it does not by any means follow that appellee may be compelled to remove the road itself. It is difficult to fix bounds to the general police power of the State, and it was held in *Butchers' Union Co.* v. *Crescent City Co.* 111 U. S. 746, that as to two subjects embraced in the general police power,—that is to say, the public health and public morals,—the legislature cannot limit the exercise of those powers to the prejudice of the general welfare. It was there said: "The preservation of these is so necessary to the best interests of social organization that a wise policy forbids the legislative body to divest itself of the power to enact laws for the preservation of health and the repression of crime."

But it is unnecessary to express any opinion here as to whether appellee is or is not protected by its charter in using its road for the transportation of all live stock to its stock yards from the railroads with which it connects. This is not a bill to restrain such use of the road,

and it cannot be said that under the charter the road cannot be used for any other purpose. This is a bill to restrain the city from summarily removing the tracks from the streets, and if they are lawfully there, and can, under the charter, be used for some lawful purpose other than transporting live stock or other things or substances which, by reason of stench arising therefrom, or otherwise, are injurious to the health and general welfare of the community through which the road is located, then their removal cannot be compelled even if such injurious use might be prohibited. (Dillon on Mun. Corp. sec. 378; Wood on Nuisances, sec. 740; *Brightman* v. *Bristol*, 65 Me. 426; *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 Ill. 25.) The charter confers power on the company "to transport or allow to be transported thereon, between said railroads and cattle yards, all cattle and live stock and persons accompanying the same, to and from said yards, and may also transport or allow to be transported between the railroads entering said city, and so connected by the road or roads hereby authorized, by steam or other power, freight and property of every kind, as well as stock and cattle." It will be noticed that this provision of the charter authorized appellee to transport or allow to be transported over its road between the connecting railroads, *"freight and property of every kind,* as well as stock and cattle." If the transportation of "stock and cattle" were prohibited the road might be useful and valuable for the transportation of "freight and property" of every other kind in which authorized use of the road no such nuisance as would compel its removal would be created. It cannot, of course, be claimed that the city may compel the removal of all railroad tracks from the public streets simply because those who live near the tracks are disturbed by those annoyances which are incident to the operation of all railroads. As it was said in *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 Ill. 25, and *Illinois Central Railroad Co.* v.

*Grabill,* 50 id. 241, "such consequences of the construction and use of railroads must be borne by all living near them, without complaint and without hope of redress, for they are inseparable from the purposes and objects of such structures." Many provisions of ordinances of the city of Chicago in evidence might be resorted to for the suppression of many of the acts complained of which are by no means "inseparable from purposes and objects" of this road.

We agree with counsel for appellee that a distinction must be taken between the structure itself and the use to which it has been put. The unlawful use may be prevented without destroying the structure which has been lawfully erected. The power in the city to abate nuisances is not denied, but it does not follow that the city may, as the easiest way to abate the nuisance, destroy valuable private property susceptible of use for a lawful purpose.

By one or more of the several counsel representing appellant it is contended that appellee had no standing in a court of equity to restrain the city from removing its railroad tracks from the streets because it did not come into court with clean hands, but had itself violated the law and exceeded its own charter powers by engaging in business for which it was not incorporated, and that all relief should have been denied to the complainant on its bill on this ground, if for no other. The point as stated by counsel, with their citation of authorities, is as follows: "The stock yards company is the moving party in this case. When a party, as actor, comes into a court of equity seeking relief who has in his prior conduct acted illegally in reference to the subject matter in question, then the doors of a court of equity will be shut against him *in limine.* Such a party does not come into court with clean hands." 6 Am. & Eng. Ency. of Law, 707, 708, and notes; 1 Pomeroy's Eq. Jur. sec. 397; 1 Story's Eq. Jur. sec. 64e; *Palmer* v. *Harris,* 60 Pa. St. 156; *Manhattan Medi-*

*cine Co.* v. *Wood*, 108 U. S. 213; *City of Chicago* v. *Wright*, 69 Ill. 318; *Holman* v. *Johnson*, Cowp. 341; *Atwood* v. *Fisk*, 101 Mass. 363; *Pond* v. *Smith*, 4 Conn. 297.

In support of this contention it is shown, that instead of confining the passenger service of the road to the transportation of persons accompanying live stock, as provided in the charter, appellee allows the road to be used by other companies in running their suburban passenger trains over it, to the number of six or more every day, between Van Buren and Lake streets, and to switch such trains back and forth over the crossings in such a manner as to be dangerous to human life; and that, to use the language of counsel, "contractors and dealers in stone, gravel and other material used in the paving of streets, receive large quantities of gravel and crushed stone over said tracks and a switch therefrom near Grand boulevard; that the noise occasioned by the continual shoveling of crushed stone and gravel from the cars standing on the switch into wagons, to be hauled to the different parts of the city, causes great annoyance to the residents of the neighborhood." And it is pointed out that it is provided in the charter that "nothing in this act contained shall be deemed, taken or construed as conferring upon the company hereby created any powers or authority to maintain or operate a railroad for the conveyance of passengers or freight in the city of Chicago," and that "any willful violation of any of the provisions of this act by the company hereby incorporated shall work an absolute forfeiture of all rights, privileges and immunities conferred by this act, and the franchise hereby conferred shall become utterly void."

Counsel do not claim that a forfeiture of the charter may be declared in this proceeding, but insist that as it appears in the case that appellee is engaged in illegal acts in the use of its road it does not come into court with clean hands, and is not therefore entitled to equitable relief. We cannot accede to this view, but are of

the opinion that the maxim invoked cannot have any just application to the facts of this case. If a defendant to a bill in equity brought by a corporation could defeat it by simply showing that the complainant had committed *ultra vires* acts, then no corporation so guilty could ever obtain equitable relief in any case. The maxim must have the same application as between individuals, and as said in Bispham's Principles of Equity, (p. 48,) it "only applies to the particular transaction under consideration, for a court will not go outside of the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing." The wrong must have been done to the defendant himself and must have been in regard to the matter in litigation. (1 Pomeroy's Eq. Jur. secs. 387, 434; 6 Am. & Eng. Ency. of Law, 708. See, also, *Kadish* v. *Garden City Loan Ass.* 151 Ill. 531; *Dering* v. *Earl of Winchelsea,* 1 Cox's Ch. 318; *Ansley* v. *Wilson,* 50 Ga. 418; *Sylvester* v. *Jerome,* 34 Pac. Rep. 760; *Langdon* v. *Templeton,* 66 Vt. 173; *Bateman* v. *Fargason,* 4 Fed. Rep. 32.) If appellee has forfeited its charter by acts *ultra vires,* the State may enforce such forfeiture by an appropriate action, but the company cannot be denied relief in a proper case in a court of equity because of such acts.

It cannot be maintained that the decree confers on appellee any greater right than it had before the decree was rendered. It can have no greater right to create or maintain a nuisance than it had before. The finding in the decree that appellee has the right to maintain and operate the road, and the injunction against the city and its officers from removing the tracks as threatened, are not an adjudication of the question whether appellee has created and maintained a nuisance or not, or whether or not it is authorized by its charter to do so, but the company is left as it was before, and as all others are, whether natural persons or artificial entities, amenable to the laws of the State and of the city in which it is

located.  Nor do we see any serious objection to the decree because it covers the whole road.  The bill and evidence were broad enough to cover the entire line, and a multiplicity of suits should be avoided.

The decree of the circuit court is affirmed.

*Decree affirmed.*