**MERRILL LYNCH, PIERCE, FENNER & SMITH, Plaintiff,**

v.

**John R. SCHWARTZ, Defendant.**

**No. 5:98–CV–33–3 WDO.**

United States District Court, M.D. Georgia, Macon Division.

Feb. 5, 1998.

Marc Thomas Treadwell, Emmitte H. Griggs, Mary M. Katz, Macon, GA, Tom Loder, Joseph A. Dougherty, Paoli, PA, for Plaintiff.

Hubert C. Lovein, Jr., Macon, GA, for Defendant.

## ORDER

OWENS, District Judge.

Plaintiff Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") has sued defendant Schwartz to enforce various covenants prohibiting Schwartz, who recently left for a competing brokerage firm, from soliciting Merrill Lynch clients whose accounts he managed or learned of during his thirty years as a financial consultant at Merrill Lynch. Both parties agree that the case is subject to mandatory and binding arbitration before the National Association of Securities Dealers ("NASD"). Pursuant to Federal Rule of Civil Procedure 65, plaintiff has moved for a preliminary injunction to preserve the status quo by preventing Schwartz and anyone acting in concert with him from continuing to solicit clients and from completing any account transfers that may be requested by clients that have already been solicited. Schwartz has moved to stay further proceedings in the case, including plaintiff's request for a preliminary injunction, pending the results of the NASD arbitration. Having carefully considered the entire record along with the arguments of counsel presented at a hearing held on February 4, 1998, the court issues the following order.

### I. Undisputed Facts

When John Schwartz started work at Merrill Lynch in January 1968, he signed an employment agreement containing the following provisions:

(1) I agree that all records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch; and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch.

(2) I further agree that, in the event of termination of my services with Merrill Lynch for any reason, I will not solicit any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any community or communities served by an office of Merrill Lynch or by any subsidiary thereof at which I am or may be employed, for a period of six months from the date of termination of my employment.

In addition, each year all Merrill Lynch financial consultants signed a Compliance Outline which contained confidentiality and nondisclosure agreements regarding all client information and accounts.

Schwartz worked continuously with Merrill Lynch for 30 years, eventually building up a client base with account assets worth approximately $120 million. In November 1997, Schwartz approached J.C. Bradford, a local competitor to Merrill Lynch which employed some former Merrill Lynch consultants, about coming over to that firm from Merrill Lynch. He testified that while the number of clients and amount of assets he managed was not discussed, there were people at J.C. Bradford who had worked for Merrill Lynch and were generally familiar with his book of business. It was understood that he would attempt to bring as many clients with him as possible.

During the negotiation period, Schwartz brought home several handwritten pages listing his clients and their addresses and account assets, which his wife then typed into a list and photocopied. Schwartz then had this information entered onto a computer disk which was sent to J.C. Bradford's headquarters as soon as Schwartz had left Merrill Lynch. Schwartz left Merrill Lynch at 4:00 p.m. on Friday, January 30, 1998. On Sunday, February 1, J.C. Bradford sent out a packet to Schwartz' clients informing them of his move and soliciting them for their brokerage accounts. Included in these packets were transfer request forms by which the clients could request that their accounts be transferred to J.C. Bradford.

As of the hearing on February 4, both parties were in the process of contacting Schwartz' clients, and some clients had called to request an account transfer.

## II. Discussion

To prevail on a motion for a preliminary injunction, the moving party must prove: (1) a substantial likelihood of succeeding on the merits; (2) a substantial threat of irreparable injury if relief is denied; (3) that its own injury would outweigh the injury to the opposing party should relief be granted; and (4) that the injunction would not disserve the public interest. *Gold Coast Publications, Inc. v. Corrigan*, 42 F.3d 1336, 1343 (11th Cir.1994). Given the unambiguous nature of the contract in question in conjunction with the well-established policy of upholding restrictive covenants where valid and reasonable, the only one of these elements that gives pause for concern is the second.

Georgia courts have repeatedly upheld restrictive covenants not to compete of the type presented here, and recently have upheld them even absent a geographical limitation to the scope of the covenant. *See, e.g., W.R. Grace & Co. v. Mouyal*, 262 Ga. 464, 422 S.E.2d 529 (1992). Moreover, as is noted in plaintiff's brief, this court has on a number of past occasions granted, to this very plaintiff, the precise relief requested here—an injunction designed to preserve the status quo pending the outcome of NASD arbitration.

The present case, however, presents a novel situation for this court insofar as the NASD has recently enacted a rule providing for expedited arbitration in just these types of situations. The rule, which went into effect on January 3, 1996, provides that upon a party's application for an immediate injunction, the NASD will schedule a hearing on the matter "no sooner than one and no later than three business days" after the NASD and the respondent receive notice thereof. See Code of Arbitration Procedure, § 10335(d)(1)(A). Given this expedited procedure, it becomes an open question whether plaintiff faces irreparable harm if the court fails to grant the requested relief, as the mandatory arbitration procedure must take place nearly as soon as this court can render an opinion. *See American Express Financial Advisors, Inc. v. Thorley*, 971 F.Supp. 780 (W.D.N.Y.1997); *Merrill Lynch, Pierce, Fenner & Smith v. William Stockum*, C.A. No. 3:96–cv–59–D (N.D.Tx., Jan. 11, 1996).

The court finds that in the rush to solicit clients, either old or new depending on one's perspective, even a few days can suffice to cause irreparable injury in the way of lost clients and reputation in the community. Thus, even though this court's decision will in all probability stand for only a very short while, perhaps two or three business days, this may make a considerable difference to plaintiff's ability to reap the benefit of its bargain through enforcement of the clear and undisputed non-solicitation agreement signed by defendant Schwartz. Therefore, in the court's opinion there is a substantial risk of injury to plaintiff unless an injunction issues. Moreover, that injury would be in the nature of lost revenues resulting from any and all fees and commissions that might have been collected by Merrill Lynch during the period in question. As such, there is no way to calculate what business may have been lost to Merrill Lynch with any degree of accuracy, and so there is no adequate remedy at law. The court therefore finds that plaintiff has established the threat of irreparable injury, and has therefore met all the elements required in order to prevail on a motion for preliminary injunction.

## III. Conclusion

Accordingly, plaintiff's motion for preliminary injunction is **GRANTED**. The court issues the following injunction: defendant Schwartz, as well as all persons contemplated by Rule 65, including all persons acting in concert with him, who receive actual notice of this order by personal service or otherwise, are preliminarily enjoined and restrained from violating any provision of the contract in question in any way. This injunction includes, but is not limited to: directly or indirectly soliciting Merrill Lynch clients; using, publishing, or transferring lists or records (including disks and other electronic communications) of clients or accounts to any person outside of Merrill Lynch; acting on the request of those already solicited to transfer accounts to J.C. Bradford or to defendant Schwartz individually; and any newspaper advertisements or other mass dissemination of defendant's beginning employment with J.C. Bradford or termination of employment with plaintiff. The injunction

shall not apply to any client solicitations or account transfers that may be agreed upon in writing by the parties and their respective counsel, or to client solicitations and account transfers involving accounts of persons related by blood or marriage to defendant Schwartz. The injunction will be dissolved when a decision by the NASD arbitration panel becomes final, or by further order of this court.

**SO ORDERED***

---

* Pursuant to Rule 65(c) no security shall be required.