**MORGAN STANLEY DW, INC., formerly known as Dean Witter Reynolds, Inc., Plaintiff,**

v.

**Spencer FRISBY and Patrick Lovell, Defendants.**

**No. CIV A.101CV2150TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 2, 2001.

John Lauchlin Monroe, Jr., Melissa Sahlin Mann, Ford & Harrison, Atlanta, GA, for Plaintiff.

Paul Oliver, Kathleen Jean Jennings, Wimberly Lawson Steckel Nelson & Schneider, Atlanta, GA, for Defendants.

## ORDER

THRASH, District Judge.

This is a diversity action in which the Plaintiff seeks a temporary restraining order against former employees for allegedly violating a non-solicitation agreement. This Court held a hearing on August 14, 2001, and verbally denied Plaintiff's Mo-

tion for a Temporary Restraining Order [Doc. 2–1]. This Order is entered to explain in detail the Court's reasons for denying the motion.

## I. BACKGROUND

Plaintiff Morgan Stanley [1] hired Defendants Spencer Frisby and Patrick Lovell as brokers in one of its Atlanta, Georgia offices. They were responsible for selling Morgan Stanley's financial products such as securities, commodities, financial futures, insurance, tax advantaged investments, and mutual funds. The Defendants signed employment agreements at the time they were hired by Plaintiff. The agreements included a non-solicitation covenant providing that the Defendants would not, for one year after their termination or resignation from Morgan Stanley, solicit those clients within a 100–mile radius of their north Atlanta office whom they serviced or learned about while employed by Morgan Stanley.

On Friday, August 3, 2001, both Defendants resigned from Morgan Stanley to accept a position with PaineWebber, a competing brokerage firm. Their identical letters of resignation instructed Morgan Stanley to provide their new contact information at PaineWebber to the customers with whom they had worked at Morgan Stanley. Defendants also informed Morgan Stanley that they had retained the same attorneys to represent them in any potential lawsuit brought by Morgan Stanley as a result of their resignation.

In its request for a temporary restraining order, Morgan Stanley alleged that in the few days following Defendants' resignation, Morgan Stanley discovered that: (1) the phone numbers of many of the Morgan Stanley clients whom Defendants had serviced during their employment

---

1. Morgan Stanley was formerly known as Dean Witter Reynolds, Inc.

were now incorrect in Morgan Stanley's computer database; (2) immediately after leaving Morgan Stanley, the Defendants began a swift and methodical effort to solicit, by overnight mailings, the customers with whom they did business while at Morgan Stanley; (3) over 30 Morgan Stanley customers with whom Defendants had dealings while employed by Morgan Stanley have contacted Morgan Stanley to terminate their brokerage relationship and transfer their accounts to the Defendants at PaineWebber; and (4) Defendants' efforts at solicitation have included financial incentives to Morgan Stanley clients such as Paine Webber's agreement to pay all costs of transfer and/or reduced commissions.

Morgan Stanley viewed these actions as unlawful efforts to solicit clients in violation of a binding and legally enforceable non-solicitation agreement signed by Defendants. Plaintiff Morgan Stanley has initiated arbitration proceedings available to it under the NASD Code, and it requests that this Court restrain Defendants from continuing their unlawful conduct in the meantime. Defendants oppose the motion on the merits. They do not contest the Court's jurisdiction to issue a temporary restraining order pending arbitration.

## II. INJUNCTIVE RELIEF STANDARD

"A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Northeastern Fla. Chapter v. Jacksonville, Fla.,* 896 F.2d 1283, 1285 (11th Cir.1990). In order to obtain a preliminary injunction, a movant must demonstrate "(1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction

may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest." *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985); *Gold Coast Publications, Inc. v. Corrigan,* 42 F.3d 1336, 1343 (11th Cir.1994). The same standard applies to a request for a temporary restraining order. *Ingram v. Ault,* 50 F.3d 898, 900 (11th Cir.1995).

## III. DISCUSSION

Plaintiff seeks a temporary restraining order pending a decision on the enforceability of a restrictive covenant signed by Defendants when they accepted employment with Morgan Stanley. The employment agreements both provide:

2.1 For a period of one year following termination of employment for any reason, and within a radius of one hundred (100) miles from the [Morgan Stanley] office to which the Employee was last assigned, the Employee will not solicit or attempt to solicit directly or indirectly, any of [Morgan Stanley's] customers who were served by or whose names became known to the Employee while in the employ of [Morgan Stanley] with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which [Morgan Stanley] or any of its affiliates is engaged.

(Morgan Stanley Dean Witter Financial Advisor Trainee Employment Agreement, Exhibit 1 to Plaintiffs' Motion for Temporary Restraining Order).

### A. IRREPARABLE HARM

Morgan Stanley argues it is entitled to a temporary restraining order because the injury to its business caused by Defendants' solicitation of Morgan Stanley's customers is imminent and irreparable. In the days following Defendants'

resignation, Morgan Stanley collected evidence that the Defendants began to contact and solicit the customers with whom they worked while employed at Morgan Stanley. In the time between Defendants' resignations and the filing of this motion, several customers had already contacted Morgan Stanley to transfer their accounts to Defendants at PaineWebber. Additionally, Plaintiff alleges that the Defendants left Morgan Stanley without means to prevent the loss of its customers. Plaintiff specifically attributes to Defendants the deliberate manipulation of Morgan Stanley's customer database to reflect incorrect phone numbers and contact information for customers serviced by Defendants. Plaintiff asserts that the loss of valuable customer relationships and good-will, which is on-going and cannot be adequately addressed by monetary damages, is sufficient to show irreparable harm to their company. It relies upon cases such as *Poe & Brown of Ga., Inc. v. Gill,* 268 Ga. 749, 750, 492 S.E.2d 864 (1997) (stating company would suffer irreparable harm due to former employee's solicitation of customers because loss of customer results in injury that cannot be quantified); *Merrill Lynch, Pierce, Fenner & Smith v. Schwartz,* 991 F.Supp. 1480, 1482 (M.D.Ga.1998) ("[I]n the rush to solicit clients...even a few days can suffice to cause irreparable injury in the way of lost clients and reputation in the community. Thus, even [if the court's decision] stands for only a very short while, perhaps two to three business days, this may make a considerable difference to plaintiff's ability to reap the benefit of its bargain through enforcement of the clear and undisputed non-solicitation agreement signed by [the former employee]").

■ Although there is some authority to support Plaintiff's position, the Court agrees with the Defendants that Morgan Stanley will not suffer irreparable harm if the request for a temporary restraining order is denied. First, Morgan Stanley has an adequate legal remedy which is immediately available. In order to obtain injunctive relief, one must demonstrate the absence of a legal remedy. *Strozzo v. Sea Island Bank,* 240 Ga.App. 183, 186, 521 S.E.2d 392 (1999). In the Court's opinion, Morgan Stanley has an adequate legal remedy immediately available to it in the form of an expedited injunctive relief hearing before the NASD. There is no dispute that the merits of this action will be decided by the NASD arbitration panel. The NASD Code, moreover, provides that, after one but not more than three business days, a single arbitrator must hear any emergency application for injunctive relief. NASD Code, § 10335, (Exhibit T to Defendants' Brief in Opposition to Temporary Restraining Order). At a hearing for injunctive relief before the NASD panel, Morgan Stanley may obtain precisely the same injunctive relief it seeks from this Court.

There is abundant authority that the availability of the NASD forum provides an adequate legal remedy, and that there is no irreparable harm if the request for a temporary restraining order is denied. Indeed, in circumstances virtually identical to those presented here, one federal court denied Morgan Stanley's motion for injunctive relief on the grounds that it had an adequate remedy with the NASD. *See, Dean Witter v. Sullivan,* No. C96–5788FDB (W.D.Wash. Aug. 28, 1996) (Exhibit U to Defendants' Brief in Opposition to Temporary Restraining Order). The *Sullivan* court ruled that "the availability of an expedited hearing in the NASD arbitration process on a motion for temporary injunctive relief negate[d] [Morgan Stanley's] assertion of immediate harm." *Id.* at 2. *See also, Salomon Smith Barney, Inc. v. Santucci,* No. 1439/2000 (N.Y.Sup. Ct. Feb. 7, 2000); *Merrill Lynch v. Marum,* No. 99–8509 (S.D.Fla. July 10, 1999); *Salomon Smith Barney, Inc. v. Cordell,*

No. 3AN–99–7791 CI (Sup.Ct. Alaska June 29, 1999); *Citicorp Investment Services, Inc. v. Rodriguez,* No. 99–1640–CTV–KING (S.D. Fla. June 21, 1999); *Merrill Lynch v. Bush,* No. 99–1010 (C.D.Ill. Jan. 13, 1999); *Merrill Lynch v. Maniscalco,* No. 98–C–8185 (N.D.Ill. Dec. 22, 1998); *Smith Barney, Inc. v. Marks,* No. 96–C–4729 (N.D.Ill. Aug. 1, 1996); *Merrill Lynch v. VanderWoude,* No. 1:96–CV–48 (W.D. Mich. Jan 25, 1996); *Merrill Lynch v. Stockum,* No. 3:96–CV–0059–D (N.D.Tex. Jan. 11, 1996) (collectively, Exhibit V to Defendants' Brief in Opposition to Temporary Restraining Order). The Court holds that Morgan Stanley has failed to meet the requirement of irreparable harm necessary to issue a temporary restraining order.

■ Second, Morgan Stanley cannot demonstrate irreparable harm because any injury it may suffer due to actions allegedly taken by Defendants is compensable by the award of money damages. The United States Supreme Court has stated that the mere loss of income, no matter how great, does not constitute irreparable harm:

> [I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury...The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.

*Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (citation omitted) (emphasis in original). Moreover, Judge Shoob of this Court denied a similar motion on these grounds. Judge Shoob, in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. de Liniere,* 572 F.Supp. 246 (N.D.Ga.1983), expressly rejected the argument that a brokerage firm suffers anything other than economic loss when a departing broker seeks to solicit and service his clients:

> [T]he Court finds that any loss of business to Merrill Lynch may be adequately redressed with money damages for breach of contract. The only possible irreparable result would be some vaguely defined loss of business momentum but the Court finds that to be unrealistic in the securities field. The real loss is in commission revenue generated by [the departing broker] from former...customers, and that can be readily calculated from the commissions he and his new firm derived from [those customers].

*Id.* at 249. The cognizable injury to brokerage firms such as Plaintiff is lost commissions. Money damages easily compensate Plaintiffs for this type of loss.

The securities industry is highly regulated. Each individual transaction is monitored electronically. Every customer transfer from Morgan Stanley is documented. Every executed trade is recorded. Every dollar earned in fees by Defendants Frisby and Lovell doing business with those customers that Morgan Stanley considers its own can be traced precisely. Any loss Morgan Stanley might suffer as a result of Defendants' departure is calculable. *Merrill Lynch, Pierce, Fenner & Smith v. Bennert,* 980 F.Supp. 73, 75 (D.Me.1997) (damages caused by the exodus of multiple brokers to a competing brokerage firm could be calculated by evidence of past history of the earnings on accounts and expert testimony). Plaintiff has failed to demonstrate irreparable harm if a temporary restraining order is not issued.[2]

---

**2.** The Court respectfully disagrees with others who have reached a different conclusion in similar cases. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048 (4th Cir.1985); *Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 919 F.Supp. 1047 (E.D.Ky.1994).

## B. LIKELIHOOD OF SUCCESS ON THE MERITS

Morgan Stanley contends that the non-solicitation covenant Defendants signed is a legally enforceable agreement not to solicit certain of Morgan Stanley's clients. Specifically, Plaintiff argues the covenant is narrowly tailored to protect Morgan Stanley's legitimate business interests in the training it gives to its brokers and their exposure to its product lines, marketing strategies, client relationships and good will. Plaintiff places great emphasis on the fact that the restrictive covenant signed by Defendants in this case contains a geographical limitation. Such a restriction is not necessary for a valid covenant and does not alone mean that the restrictive covenant is enforceable. *Habif, Arogeti & Wynne, P.C. v. Baggett et al.,* 231 Ga.App. 289, 297, 498 S.E.2d 346 (1998) ("When strictly scrutinized, a covenant not to solicit is generally valid if it prohibits soliciting clients of the employer with whom the employee had contacted during [his] employment with the employer, regardless of whether it has a territorial restriction."); *see also, W.R. Grace & Co. v. Mouyal,* 262 Ga. 464, 467–68, 422 S.E.2d 529 (1992) (enjoining violation of non-solicitation covenant restricting solicitation of customers with whom departing employee had contact while employed with the party seeking to enforce the covenant). Plaintiff also takes the position that the tangible customer lists, account summaries, and related information which Defendants allegedly appropriated constitute trade secrets under Georgia law. *See,* O.C.G.A. § 10–1–762; *American Buildings Co. v. Pascoe Bldg. Systems, Inc.,* 260 Ga. 346, 350, 392 S.E.2d 860 (1990) ("When one has acquired knowledge of a trade secret by reason of a confidential business relationship with the holder of the trade secret, an injunction restraining divulgence of the trade secret will lie.").

After careful consideration, it appears to the Court that Plaintiff is not likely to succeed on the merits when seeking to enforce its non-solicitation agreement. First, the restrictive covenants contained in Morgan Stanley's standard form employment contracts are overbroad and unenforceable under Georgia law. Second, applicable industry standards and Morgan Stanley's own corporate practice demonstrate that the client information at issue does not constitute a trade secret under Georgia law. Third, equity estops Morgan Stanley from challenging Defendants' transition to PaineWebber because Morgan Stanley actively hires brokers from competitors and encourages them to use their client information to solicit account transfers. Thus, Morgan Stanley is unlikely to succeed on the merits of its claim before a NASD arbitration panel.

 Plaintiff is not likely to succeed on the merits because the non-solicitation clause contained in its employment contract is overbroad and unenforceable under Georgia law. Restrictive covenants against competition in employment agreements are in partial restraint of trade and, therefore, are enforced only where the restrictions are "strictly limited, both in time and geographical effect, and when the restrictions are otherwise reasonable, considering the business interests of the employer needing protection and the effect of the restrictions on the employee." *Sanford v. RDA Consultants, Ltd.,* 244 Ga.App. 308, 310, 535 S.E.2d 321 (2000). In evaluating the reasonableness of a particular covenant, Georgia courts employ a three element test of duration, territorial coverage and scope of activity. *Id.* (citing *W.R.Grace,* 262 Ga. at 465, 422 S.E.2d 529). Under Georgia law, a single unreasonable provision in a restrictive covenant will void the entire contract, and courts will not "blue line" the covenant to salvage

any non-offending parts. *De Liniere*, 572 F.Supp. at 248 n. 1; *Richard P. Rita Personnel Services Int'l, Inc. v. Kot*, 229 Ga. 314, 317–18, 191 S.E.2d 79 (1972).

▉ In this case, the restrictive covenant is overbroad because it prohibits Defendants from contacting not only clients that they have serviced, but anyone whose names became known to Defendants during their employment with Plaintiff. The clause does not specify any particular manner in which such names may have become known to Defendants. For example, the restrictive covenant would prohibit the Defendants from soliciting the business of clients of other Morgan Stanley brokers whose names became known to them through casual conversation at the office. Morgan Stanley has no legitimate interest in prohibiting this type of competition. Such a prohibition is an unduly strict restraint on trade, and would not pass the strict scrutiny standard enforced by the Georgia courts. In *Singer*, the court held that because the restrictive covenant prohibited the accountant from soliciting clients of the employer whose accounts the accountant had not serviced, it was unenforceable. *Singer*, 250 Ga. at 377–78, 297 S.E.2d 473. The court reasoned that the accountant did not stand in a position of trust and confidence with these clients. *Id.* Without this relationship of trust, the former partner held no unfair competitive edge over his old accounting firm. *Id.* "Consequently, this provision unfairly restricts ordinary competition and provides [the accounting firm] with greater protection than it needs." *Id.; see also, Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539, 307 S.E.2d 914 (1983) (exterminating company could not restrict former exterminator from contacting customers with whom he had not worked during the time of his employment); *Windsor–Douglas Assocs. Inc., v. Patterson*, 179 Ga.App. 674, 675, 347 S.E.2d 362 (1986) (former employment recruiter could not be prohibited from soliciting any of her employer's client, only those customers she had serviced); *ALW Marketing Corp. v. Drunasky et al.*, 1991 WL 345313, * 5 (N.D.Ga.1991.) (denying temporary restraining order to enforce restrictive covenants where clause prohibited solicitation of business for effectively every client of the employer); *Covington v. D.L. Pimper Group, Inc.*, 248 Ga.App. 265, 269, 546 S.E.2d 37 (2001) (non-solicitation clause was not overbroad where employee was prohibited from soliciting clients or prospective clients with whom employee had contact over two year period). While the clause Morgan Stanley wishes to enforce does not purport to restrict Defendants from contacting any and all clients of Morgan Stanley, it is nonetheless overbroad by prohibiting the solicitation of clients which Defendants did not service as a broker while employed at Morgan Stanley. If the restrictive covenant is unenforceable in Georgia, Plaintiff is unlikely to succeed on the merits of its claim

▉ Additionally, the clients and client information that Morgan Stanley seeks to protect do not constitute trade secrets under the Georgia Trade Secrets Act., O.C.G.A. § 10–1–761 *et seq.* A review of the standard and customary practice of the securities industry, as well as of Morgan Stanley's own corporate practice, demonstrates that the clients and client information at issue here are not proprietary to Morgan Stanley, nor are they sufficiently "secret" for trade secret protection. When Morgan Stanley hires brokers from its competitors, it takes the completely opposite position as it has in the present case. Morgan Stanley vigorously defends the same hiring practices it challenges here and admits that the client information at issue is not a trade secret. Specifically when Morgan Stanley was sued for hiring multiple brokers from a competitor, the

President of its Consumer Markets Division testified as follows:

> It is the normal practice within the brokerage industry for account executives to move freely from one brokerage concern to another. Hardly a month goes by when we do not lose account executives to our competitors ... and scarcely a month goes by when we do not hire someone away from the competition. It is the way that business is done in our industry.

> Moreover, it also flies in the face of the custom and practice of the brokerage industry to suggest that when an account executive moves from one brokerage concern to another he is not entitled to contact his former clients after he switches firms. Again the practice in the industry is directly contrary to what the plaintiffs suggest: in practice, when an account executive moves from one brokerage concern to another, he is entitled and expected to make use of the names of the customers that he served while employed by his prior brokerage firm.

(Affidavit of James F. Higgins, ¶¶ 27, 28, Exhibit A to Defendants' Brief in Opposition to Temporary Restraining Order). He also testified that, within the securities industry, confidentiality agreements relating to client records are not interpreted to prevent a broker from contacting and servicing his clients when he moves from one firm to another:

> It is widely understood in the brokerage industry that confidentiality agreements executed by account executives are not construed so as to prohibit those account executives from contacting their former clients when they change jobs. To so construe agreements of that type would put an end to the mobility of account executives that has been a hallmark of the brokerage industry.

(Affidavit of James F. Higgins, ¶ 13, Exhibit A to Defendants' Brief in Opposition to Temporary Restraining Order). He concluded by saying that "[Morgan Stanley] interprets its own confidentiality agreement...in accordance with these generally accepted industry principles." *Id.* In fact, Defendants have cited to the Court many examples of NASD arbitration panels and other courts, as well as the publicly filed pleadings of other major brokerage firms, who recognize that it is accepted industry practice for brokers to take with them copies of their monthly statements so that those clients who choose to follow the broker can be serviced at the new firm. *See, Dean Witter v. Imperatore,* No. C–32–97E (Super Ct. N.J. Feb. 14, 1997 (Exhibit C at pg. 9)); *Merrill Lynch v. E.F. Hutton,* 403 F.Supp. 336, 341 (E.D.Mich.1975). Indeed, in denying Morgan Stanley's motion for injunctive relief in identical circumstances, one court ruled that:

> The [broker's] position, which seems sustained and supported by what has been submitted, stands for the proposition that within the securities industry, employers do not have a protectable interest in preserving and maintaining for themselves customer records or the right to prevent former employees from dealing with customers.

> Customer records and the right to deal, the right of dealing between customer and former employee is regarded within the industry as something that belongs to and is determined by the customer. It is not...something which a former employer is free to tie up and restrain, as Dean Witter has attempted to do by the Restrictive Covenant in question here.

*Dean Witter v. Imperatore,* No. C–32–97E (Super Ct. N.J. Feb. 14, 1997) (Exhibit C at pg. 9). Morgan Stanley's contention

here, therefore, that the clients or client records at issue are somehow "confidential" or "protectable business interests" or that Defendants Frisby and Lovell should be enjoined from servicing their clients is without merit.

 Furthermore, Morgan Stanley is estopped from seeking a restraining order against competitive conduct which it admits to engaging in. As demonstrated by Defendants' citation to Morgan Stanley's publicly filed pleadings, Morgan Stanley regularly hires brokers from competitors and, in so doing, engages in the very same practices that it challenges here. Defendants assert, and the Court agrees, that Morgan Stanley can not challenge similar conduct here because of its own unclean hands. O.C.G.A. § 23–1–10 ("He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action"). In virtually identical circumstances, a court stated recently that, "[i]t is against public policy to allow Merrill Lynch to conduct its business in such a way as to gain benefits, while at the same time requiring its employees to meet a different industry standard." *Merrill Lynch v. Buchanan,* No.2000/8144 (Monroe County N.Y. September 18, 2000) (Exhibit H to Defendants' Brief in Opposition to Temporary Restraining Order); *see also, Salomon Smith Barney, Inc. v. Vockel,* 137 F.Supp.2d 599, 604 (E.D.Pa.2000). Morgan Stanley is estopped by its unclean hands from seeking equitable relief from this Court. Equity does not permit Morgan Stanley to enforce restrictive covenants against Defendants Frisby and Lovell when it actively recruits brokers from competitors and encourages them to retain and use copies of client records to solicit the transfer of client accounts from those competitors without regard to any agreements between the brokers and the competitor.

Finally, it appears that Morgan Stanley is unlikely to succeed before the NASD arbitration panel. As long as the departing broker obeys the unwritten rules against taking original records or soliciting clients before resigning, the brokerage firms have a long record of losing arbitration proceedings. For instance, in *Seramba v. Merrill Lynch,* NASD Case No. 99–03044 (July 9, 1999) (Exhibit M to Defendants' Brief in Opposition to Temporary Restraining Order), a NASD arbitrator enjoined a brokerage firm from interfering with a departing broker's efforts to solicit and service his clients, including enforcing any court-obtained injunction. Defendants have cited several other cases where NASD single arbitrators enjoined brokerage firms from interfering with the former employee's efforts to solicit his clients. *Kinkead v. Merrill Lynch,* NASD Case No. 00–3730 (Sept. 2, 2000) (Exhibit N to Defendants' Brief in Opposition to Temporary Restraining Order); *Salomon Smith Barney, Inc. v. LoBosco,* No. MON–C–34–00 (N.J.Sup.Ct. Feb. 3, 2000) (Exhibit O to Defendants' Brief in Opposition to Temporary Restraining Order) (denying brokerage firm's motion for injunctive relief and ordering firm to comply with NASD and New York Stock Exchange rules requiring firms to honor customer requests to transfer their accounts). Frequently, when brokerage firms do obtain court-ordered injunctive relief, the NASD panels dissolve that relief. *See, e.g., Merrill Lynch v. Arno,* Case No. 95–00176 (Feb. 27, 1995) (Exhibit P to Defendants' Brief in Opposition to Temporary Restraining Order). In *Arno,* the NASD arbitration panel dissolved the preliminary injunction, dismissed all of the former firm's claims, and ruled that the departing broker was entitled to retain and use client records and accept business from his clients. *Id.* The *Arno* panel declared void and unenforceable "any trainee agreement or other in-

strument signed by [the brokers] in favor of [the former firm] that purports to preclude him from retaining copies of client records or from soliciting his customers." *Id.* Similarly, in *Merrill Lynch v. Beal,* NASD Case No. 98–2241 (July 30, 1998) the former brokerage firm obtained a preliminary injunction against three departing brokers from a federal court. *See Beal,* (Exhibit D to Defendants' Brief in Opposition to Temporary restraining order). However, after hearing evidence at an expedited arbitration, a NASD panel dissolved the court-ordered injunction. The NASD panel did so even though the departing brokers executed agreements containing post-employment restrictions against customer solicitations and, unlike Defendants Frisby and Lovell here, violated those specific provisions by aggressively soliciting their clients *before* they left their firm. *Id.* The brokers' former firm was awarded damages for violation of the unwritten rules against soliciting clients prior to resigning.

In addition to dissolving court-ordered injunctions, arbitration panels have also assessed punitive damages against brokerage firms, including Morgan Stanley, for wrongfully obtaining those injunctions. *See, Dean Witter Reynolds, Inc. v. Caruso,* NASD Case NO. 96–04987 (Nov. 5 1997) (Exhibit Q to Defendants' Brief in Opposition to Temporary Restraining Order). In *Caruso,* Morgan Stanley obtained court-ordered injunctive relief after it alleged that four departing brokers and their new firm misappropriated confidential information, breached employment agreements, and unfairly competed with Morgan Stanley. *Id.* The arbitration panel immediately "terminated and dissolved" the injunction, dismissed all of Morgan Stanley's claims, and awarded each of the departing brokers $100,000 "for loss of reputation, for wrongful injunction, and as punitive damages." *Id.* at 8–9.

Defendants also cite other cases decided by the NASD arbitrators where brokerage firms were unsuccessful in enforcing non-solicitation agreements similar to the one at issue in this case. *Malizia v. Merrill Lynch,* NASD Case No. 95–02230 (July 10, 1995); *Doss v. Merrill Lynch,* NASD Case No. 95–02079 (May 23, 1995); *Murphy v. Merrill Lynch,* NASD Case No. 93–04885 (Dec. 16, 1993); *Shearson Lehman Hutton, Inc. v. Van de Witt Jorgensen,* NASD Case No. 90–01040 (Jan. 8, 1990) (collectively, Exhibit S to Defendants' Brief in Opposition to Temporary Restraining Order). Certainly these decisions by NASD arbitration panels demonstrate that preliminary injunctive relief is not granted as a matter of course. For the reasons stated above, the Court holds that Plaintiff has failed to demonstrate sufficient likelihood of success on the merits to justify issuance of a temporary restraining order.

## C. BALANCE OF THE EQUITIES

■ In its brief in support of its request for a temporary restraining order, Morgan Stanley does not discuss whether and how the harm to it outweighs the damage to the Defendants of the relief requested. As have others, this Court holds that the balance of the equities clearly tips in favor of Defendants and their customers. Brokerage firms can survive the denial of an injunction far more readily than their departing employees can survive its issuance. In *de Liniere,* Judge Shoob noted that if an injunction issued, the broker would be prevented from servicing the customers for whom he had worked for over two years. *de Liniere,* 572 F.Supp. at 249. Defendants in this case would similarly suffer. Prior to beginning employment with Morgan Stanley, Defendant Frisby was not licensed to sell securities. Defendant Lovell had been registered to sell securities for less than a year and, therefore, had limited experience or training. The only client base Defendants

possess is that gained during their employment with Plaintiff. To deprive them of contact with their customers would "leave [them] with no client base in a business that thrives on commissions from regular clients." *Id.* The damage to Defendants Frisby and Lovell of a temporary restraining order would equal almost a complete loss of income. According to Plaintiff's website, on the other hand, Morgan Stanley operates over 700 offices in 28 countries. This year, Morgan Stanley employs over 60,000 people. (http://www.morganstanley.com/about/index.html). While this number includes both brokers and other staff, the Court is hesitant to believe that the departure of two brokers will so damage Plaintiff's business as to tip the equities into its favor. The Court holds that balance of the equities clearly favors the denial of Plaintiff's requested temporary restraining order.

### D. PUBLIC INTEREST

Again, Plaintiff Morgan Stanley does not discuss whether issuing a temporary restraining order in this situation would further the public interest. The Court agrees with Defendants that the entry of injunctive relief is not in the public interest. The court in *Prudential Securities v. Plunkett*, 8 F.Supp.2d 514, 520 (E.D.Va.1998) noted that the broker-client relationship was similar to that of attorney-client or doctor-patient. Personal trust and confidence pervades each of these relationships, and "[c]lients should be free to deal with the broker of their choosing and not subjected to the turnover of their accounts to brokers associated with the firm but unfamiliar to the client, unless the client gives informed consent to the turnover." *Id.* When considering the public interest factor of a request for equitable relief in this context, Georgia courts recognize the importance of the "public's ability to choose the professional services it prefers." *Singer,* 250 Ga. at 377, 297 S.E.2d 473. "The public has little interest in having its choice restricted to brokers *other* than the one who has served them, pending the resolution of this dispute." *de Liniere,* 572 F.Supp. at 249 (emphasis in original). In a time of market volatility, the inability of a client to consult a trusted advisor for even a single day could result in enormous financial losses to the client. This danger outweighs any injury to the Plaintiff that may occur due to the disloyalty of its former employees. Issuance of a temporary restraining order in this case is not in the public interest.

### IV. CONCLUSION

For the reasons set forth above, the Motion for Temporary Restraining Order [Doc. 2–1] is DENIED.